IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| William Joseph Rolon, | ) | C/A No. 0:13-1009-JMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner | ) | |
| of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, William Joseph Rolon ("Rolon"), brought this action pursuant to 42 U.S.C. § 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that this matter should be remanded for further consideration as explained below.

## ADMINISTRATIVE PROCEEDINGS

In June 2010, Rolon applied for SSI. Rolon's application was denied initially and on reconsideration and he requested a hearing before an administrative law judge ("ALJ"). A video hearing was held on November 4, 2011 at which Rolon appeared and testified and was represented

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.



by Emily Sheets, Esquire.  After hearing testimony from a vocational expert, the ALJ issued a decision December 8, 2011 finding that Rolon was not disabled.  (Tr. 11-20.)

Rolon was born in 1984 and was twenty-six years old on the date his application was filed. (Tr. 112.)  He has a ninth-grade education and has past relevant work experience as a truck driver's assistant, a stocker at a grocery store, a maintenance worker at a poultry plant, and a forklift driver. (Tr. 29, 155.)  Rolon alleges disability due to short-term memory loss, brain damage, and asthma. (Tr. 154.)

The ALJ made the following findings and conclusions:

1.  The claimant has not engaged in substantial gainful activity since June 3, 2010, the application date (20 CFR 416.971 *et seq.*).

2.  The claimant has the following severe impairments:  status post gunshot wound to the head and arm with craniotomy, and borderline intellectual functioning (20 CFR 416.920(c)).

*    *    *

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

*    *    *

4.  . . . [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a).  Specifically, the claimant is able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for six hours in an eight-hour day, and stand and walk occasionally.  The claimant cannot climb, crawl, or balance, and cannot have any exposure to industrial hazards.  He must be given the option to sit or stand at will.  He can perform simple, routine, repetitive tasks with no requirement for any complex reading, writing, or mathematical computation.  The claimant can have no more than occasional fingering, handling, or overhead reaching with the dominant hand and arm.

*    *    *

5.  The claimant is unable to perform any past relevant work (20 CFR 416.965).

*    *    *



6.    The claimant was born . . . [in] 1984 and was 26 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7.    The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

                                    *    *    *

10.   The claimant has not been under a disability, as defined in the Social Security Act, since June 3, 2010, the date the application was filed (20 CFR 416.920(g)).

(Tr. 13-20.)

Rolon filed a request for Appeals Council review which was denied on February 16, 2013, making the decision of the ALJ the final action of the Commissioner.  (Tr. 1-3.)  This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973).  The regulations require the ALJ to consider, in sequence:



    (1)     whether the claimant is engaged in substantial gainful activity;

    (2)     whether the claimant has a "severe" impairment;

    (3)     whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

    (4)     whether the claimant can perform his past relevant work; and

    (5)     whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 416.920(a)(4).[2]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

    [2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. § 416.920(h).



## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Rolon raises the following issues for this judicial review:

I.    In determining that Mr. Rolon's impairments did not meet or equal a listed impairment, the ALJ ignored important evidence and failed to adequately articulate his findings.

        A.    Mr. Rolon's neurological impairments, which resulted from a gunshot wound to the head, met or equaled Listing 11.04. Although the ALJ noted the criteria for this Listing, he did not discuss or consider any of the related medical evidence. This is error. The weight of the evidence establishes that Mr. Rolon had "significant and persistent disorganization of motor functioning" in his right arm and right leg, resulting in sustained disturbance in dexterity and gait.



B.    The ALJ failed to consider the significance of Mr. Rolon's Verbal Comprehension Index (VCI) score of 52 on the Wechsler Adult Intelligence Scale-IV (WAIS-IV). Because the VCI is equivalent to a verbal IQ score, the evidence conclusively demonstrates that Mr. Rolon had a significant intellectual disability. The ALJ erred by failing to consider whether Mr. Rolon's intellectual disability in combination with his other impairments equaled Listing 12.05(B). Particularly, where, as here, the weight of the evidence establishes that Mr. Rolon's impairments were medically equivalent to Listing 12.05(B), and he was, therefore, presumptively disabled.

II.    The ALJ failed to include all of Mr. Rolon's limitations in the residual functional capacity determination, and the ALJ's finding that Mr. Rolon could not perform jobs requiring "any complex reading, writing, or mathematical computation" is impermissibly vague. The imprecision of the ALJ's reading and writing limitation is especially critical in this case where all of the named jobs required language development levels that exceed Mr. Rolon's objectively measured abilities.

(Pl.'s Br., ECF No. 17.)

## DISCUSSION

At Step Three of the sequential analysis, the Commissioner must determine whether the claimant meets the criteria of one of the Listings and is therefore presumptively disabled. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis added). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the Listing of that impairment. 20 C.F.R. § 416.925(d); see also Bowen v. Yuckert, 482 U.S. 137, 146 (1987) (noting that the burden is on the claimant to establish that his impairment is disabling at Step 3); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (same). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment.

PJG

In this case, Rolon first argues that the ALJ erred in evaluating whether Rolon met Listing

11.04B.[3]  This Listing states:

> Central nervous system vascular accident. With one of the following more than 3
> months post-vascular accident:
>
> . . . .
>
>> B.    Significant and persistent disorganization of motor function in two
>>        extremities, resulting in sustained disturbance of gross and dexterous
>>        movements, or gait and station (see 11.00C).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.04.  Listing 11.00C provides:

> Persistent disorganization of motor function in the form of paresis or paralysis,
> tremor or other involuntary movements, ataxia and sensory disturbances (any or all
> of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral
> nerve dysfunction) which occur singly or in various combinations, frequently
> provides the sole or partial basis for decision in cases of neurological impairment.
> The assessment of impairment depends on the degree of interference with locomotion
> and/or interference with the use of fingers, hands, and arms.

Id., § 11.00C.

In determining that Rolon did not meet or medically equal a listed impairment in § 11.00, the

ALJ stated only that "the medical evidence of record fails to document sensory or motor aphasia

resulting in ineffective speech or communication or significant and persistent disorganization of

motor functioning in two extremities, resulting in sustained disturbance of gross and dexterous

movements, or gait and station, as required more than three months post-accident." (Tr. 13.)  The

ALJ provides no further discussion or explanation for this finding.  However, as pointed out by

Rolon, there is medical evidence in this record that could support a contrary finding, and without

further discussion by the ALJ on how he reached this conclusion the court cannot say that this

---

[3] Rolon points out that Listing 11.18, Cerebral trauma, refers the ALJ to evaluate cerebral
trauma under Listings 11.02, 11.03, 11.04, and 12.02, as applicable.  20 C.F.R. Pt. 404, Subpt. P,
App. 1, § 11.18.



finding is supported by substantial evidence.  See Cromedy v. Colvin, No. 8:12-cv-02522-DCN, 2014 WL 1093101, at *3 (D.S.C. Mar. 17, 2014) (concluding that a similar conclusory finding rendered the court unable to find that the ALJ's determination was supported by substantial evidence because the "discussion marshals no supporting evidence and does not point the reader to any supporting documentation in the record" and stating that "[w]hile an ALJ need not arrange his opinion in any particular format, this limited discussion leaves the court guessing as to how the ALJ arrived at his finding that Cromedy's multiple sclerosis did not meet Listing 11.09").  Specifically, Rolon argues that there is evidence of "significant and persistent disorganization of motor functioning" in his right arm and right leg, resulting in sustained disturbance in dexterity and gait. For example, following a consultative examination on September 9, 2010, Dr. Asbury Williams found that Rolon walked "with a marked limp favoring his right leg"; had "difficulty getting on and off the examining table, but can do so if the table is lowered enough"; was "able to bend, but ha[d] difficulty stooping"; "his right hand is weaker, but can be used for mild gripping." (Tr. 274.) During a psychological consultative evaluation, Dr. Jonathan Simons's observations included: "[H]is balance was poor.  He appeared to have very poor strength in his right hand.  He was able to write his name poorly and slowly.  He seemed to have significant spasticity throughout the right side of his body." (Tr. 277.) Therefore, the court is constrained to recommend that this matter be remanded to the Commissioner for further considered and evaluation.[4]

Furthermore, in light of the court's recommendation that this matter be remanded for further consideration, the court need not address Rolon's remaining issues, as they may be rendered moot

---

[4] The court expresses no opinion as to whether further consideration of the evidence by the ALJ should lead to a finding that Rolon meets a Listing.  Further analysis and discussion may well not affect the ALJ's conclusion on this point.



on remand.  See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).  Moreover, if necessary, Rolon may present his remaining arguments on remand.

## RECOMMENDATION

Based on the foregoing, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further consideration as discussed above.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 17, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"   Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).